UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENIA KANELLOS,<br><br>        Plaintiff,<br><br>    -against-<br><br>ROCKLAND COUNTY CPS; JOAN SILVESTRI; RADHIKA NAGUBANDI; FINA DEL PRINCIPIO; ED LUSSENT; TROUTNER; ALLISON AIELLO; CARLA ORTIZ; VANESSA TORRES; JILL STAHL; MARIA GASTON-DESIMONE; SARAH RAMOS; NADIA HAU; ELSA GONZOLES; ROLLIN AURELIEN; MARISE FEDE; MYRIAM DORCLEY; JOAN THOMAS; JOLIE ARANCIO; MADELIN DELEON; ROWEN DELSON; YASMINE BOULAY; ROCKLAND COUNTY DEPARTMENT OF SOCIAL SERVICES; FRANK SUNG; BRAD BOOKSTEIN; CLARKSTOWN POLICE DEPARTMENT; JASON GIOSEFFI; K. THURSTON; MCDERMOTT; M. BENDER; LASHET; RIOS; M. ROMANELLO; H. MENDEZ; C. QUINN; W. CUNNANE; THOMAS O'CONNELL; MCKIERNAN; A. GOULD; T. FITZGERALD; D. SPIEGEL; WOOLEY; CHRIS MOLONEY; ROCKLAND COUNTY LEGAL AID SOCIETY; JACQUELINE SANDS; CANDICE WHATLEY; CLARKSTOWN CENTRAL SCHOOL DISTRICT; MARY CHAMBERLAIN; VOLUNTARY COUNSELLING SERVICES; CAROL ROSS, THERAPIST; KATHLEEN CHINDEMI; AND CYNTHIA PILGER GONZOLEZ; AND VICKY WEINER,<br><br>        Defendants. | 25-CV-10091 (NSR)<br><br>**ORDER OF SERVICE** |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/24/2026__

NELSON S. ROMÁN, United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under a litany of federal and state

statutes, alleging that the 53 named Defendants violated her rights secured by both federal and

state law during their investigations into her and subsequent Family Court proceedings concerning Plaintiff's custody of her children.

Plaintiff names as defendants: (1) Rockland County CPS, or Child Protective Services, and 17 of its employees; (2) Rockland County Department of Social Services ("DSS") and five of its employees; (3) the Clarkstown Police Department and 17 of its employees; (4) the Rockland County Legal Aid Society and two of its employees; (5) the Clarkstown Central School District and one of its employees; (6) Voluntary Counselling Services and one its employees; and (7) three adoptive and foster parents.

She also filed a motion to seal the entire case and for other relief. (ECF No. 5.)

Plaintiff invokes a host of federal statutes, including 42 U.S.C. § 1983, the False Claims Act, the Racketeer Influenced and Corrupt Organizations ("RICO") Act, and the Family Educational Rights and Privacy Act ("FERPA"). She also invokes numerous federal and state criminal statutes, as well as claims under New York common law. She seeks both damages and forms of injunctive relief that would have the effect of intruding on ongoing proceedings in Family Court and seeking review of final Family Court orders.

By order dated March 30, 2026, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons that follow, the Court: (1) dismisses, for lack of standing, all claims that Plaintiff purports to assert on behalf of her children; (2) dismisses, for failure to state a claim, all claims that Plaintiff purports to assert under federal and state criminal statutes; (3) dismisses Plaintiff's claims under the False Claims Act; (4) dismisses, under the *Younger* abstention doctrine, all claims and requests for relief that would intrude upon ongoing Family Court proceedings involving Plaintiff and her children; (5) dismisses, under the *Rooker-Feldman* doctrine, all claims in which Plaintiff seeks review of, or relief from,

final Family Court orders involving Plaintiff and her children; (6) dismisses, for failure to state a claim, 23 Defendants against whom Plaintiff makes no well-pleaded allegations of wrongdoing, with 30 days' leave to replead; (7) dismisses, for failure to state a claim, all claims against the Clarkstown Police Department and the Rockland County Department of Social Services, for failure to state a claim, and substitutes in their place, under Rule 21, the Town of Clarkstown and the County of Rockland, respectively; (8) denies Plaintiff's motion to seal the entire case, but directs the Clerk of Court to maintain Plaintiff's complaint, amended petition, and motion to seal under restricted view and directs Plaintiff to file a redacted version of amended petition within 30 days that complies with Rule 5.2 of the Federal Rules of Civil Procedure so that there is a public version of the operative pleading on the docket; (9) denies her other motions for relief; and (10) directs service on Defendants.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 555). The Court need not accept, however, "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following allegations are drawn from the amended petition, which Plaintiff filed on December 18, 2025 (ECF No. 6) and is the operative pleading. This case concerns "a corrupt, multi-year scheme perpetrated by Rockland County, its Department of Social Services (DSS), Child Protective Services (CPS), and a network of officials complicit officials, employees, and associated entities." (ECF No. 6, at 7.) Plaintiff alleges that Defendants—she does not identify which ones—submitted false claims for payment under programs subsidized by state and federal government. The false claims were premised on Defendants submitting knowingly false certifications of grant requirements. Plaintiff also alleges that Defendants committed crimes against her and her minor children, both while they were in Plaintiff's custody and while they were in foster or adoptive homes, in the CPS investigation against her and eventual termination of her parental rights. (*Id.*)

Plaintiff is a mother of seven children.[1] In 2011, she "proactively" contacted CPS to seek supportive services related to traumas that they experienced as a family. (*Id*. at 14.) CPS allegedly

---

[1] Plaintiff repeatedly identifies her minor children with their full names throughout the pleading, in violation of Rule 5.2 of the Federal Rules of Civil Procedure. In light of Plaintiff's use of her minor children's names and her descriptions of some of them as, alternatively, sex abuse perpetrators and sex abuse survivors, and in light of Plaintiff's subsequent motion to seal all filings in this case, the complaint, the motion to seal, and the amended petition have

used that request as a pretext to break up the family; by late 2011, CPS had removed all seven children from her custody, with three of them going into "facilities" and four of them going to foster families. (*Id*. at 14-15.) In 2013, CPS caseworker Ortiz offered Plaintiff an ultimatum: "relinquish her parental rights to her four younger children or lose all seven." (*Id*. at 15.) In 2014, while Plaintiff was in custody related to an arrest, unidentified persons or entities coerced her into signing "judicial surrender documents for her four younger children" while she was handcuffed in court. (*Id*.) Her parental rights were thereafter terminated, presumably only to her rights as to her four younger children. (*Id*.)

In 2016, Plaintiff's sons, R. and A., were removed from Plaintiff's custody based on false allegations and were placed into foster care with Defendant Kathleen Chindemi, who was already serving as foster parent for two of Plaintiff's daughters. (*Id*.) CPS later terminated R.'s necessary mental-health treatment. (*Id*.)

From 2014 to 2022, Plaintiff's daughters, C. and M., "suffered horrific and continuous sexual and physical abuse in their adoptive home," which was run by Chindemi. Plaintiff alleges that this abuse was perpetrated by numerous members of the Chindemi houshould, including by Plaintiff's own son, R., who was adopted into the Chindemi home in 2016. (*Id*. at 16.) In 2022, Chindemi's alleged abuse of M. resulted in M.'s hospitalization. (*Id*.) CPS, however, refused to investigate the abuse of M. at the Chindemi household. (*Id*. at 16-17.) Around the same time period, officers of the Clarkstown Police Department responded to other disturbances at the Chindemi household that stemmed from allegations of abuse. (*Id*. at 17.)

---

been placed on restricted view on the ECF docket. Throughout this memo, the Court will refer to each of the children by the initial of their first name.

In May 2021, M. was taken to the hospital after a conflict with Chindemi, who checked M. out of the hospital before medical staff was ready to discharge the child. (*Id*. at 18.) Moreover, both before and after this hospitalization, CPS failed to offer M. substance abuse counseling, which Plaintiff says that M. required, despite CPS allegedly knowing of M.'s need for those services. (*Id*. at 20-21.)

On an unidentified date, while M. was in CPS custody, M. called Plaintiff, allegedly under duress, to request permission to convert to Chindemi's religion.[2] Plaintiff, also allegedly under duress, consented to M.'s conversion. (*Id*.)

Plaintiff next alleges that attorneys from the Rockland County Legal Aid Society, who were acting as M.'s attorneys, advocated for M. to remain with the abusive Chindemi household despite allegedly knowing of the past abuse allegations. (*Id*. at 22.) She also alleges that the Clarkstown Police Department was made aware of allegations of sexual abuse in the Chindemi household yet never investigated, thereby allegedly facilitating future abuse. (*Id*.)

Plaintiff then pivots to the circumstances involving her biological daughter, C., and C's adoptive mother, Cynthia Pilger Gonzolez. (*Id*. at 23-24.) She alleges that on or about November 10, 2023, Gonzolez falsely reported to CPS that Plaintiff had died, which Plaintiff contends was a form of retaliation related to Plaintiff's advocacy for C. which caused Plaintiff distress. (*Id*. at 24.)

On October 5, 2022, Plaintiff filed a petition in which she sought the return of M. to her custody. (*Id*.) About a week later, the Rockland County Family Court granted the petition and awarded temporary custody of M. to Plaintiff. Plaintiff contends that as a result of this litigation success, CPS officials—including Jill Stahl and Vanessa Torres—"subjected the Plaintiff to multiple instances of sexual assault during court-ordered supervised urine screenings." (*Id*.)

---

[2] Plaintiff identifies neither her religion nor Chindemi's.

Although Plaintiff's allegations are not entirely clear, it appears that: (1) during a screening on February 27, 2023, Torres stood in front of Plaintiff and ordered her to "lift her shirt to expose her bare breasts and vagina, while smirking at Plaintiff" and that (2) during a screening on April 23, 2023, Stahl "rubbed her leg on the plaintiff's leg as the plaintiff was trying to give the urine specimen." (*Id*. at 25-26.)

Plaintiff alleges additional retaliation related to her litigation success. She states that on February 26, 2024, "CPS caseworkers Nadia Hau and Elsa Gonzolez, aided by Clarkstown Police Officers Thomas O'Connor, Officer Jason Gioseffi, and officials from Birchwood School, Dr. Marc Rouch, conducted an unlawful, warrantless emergency removal of [M.] from the Plaintiff's home." (*Id*. at 26.) Plaintiff emphasizes that there was no consent for entry into her home, no warrant authorizing it, and no exigent circumstances justifying it. (*Id*.)

Judge Tanguay presided over a proceeding on the next day. During that hearing, Hau allegedly committed perjury by stating that Plaintiff consented to the removal of M. (*Id*. at 27.) According to Plaintiff, "Attorney Barbara Wilmit, counsel for Rockland County DSS, furthered this fraud on the court by falsely representing to Tanguay that [M.] wished to enter the formal foster-care system." (*Id*.) Judge Tanguay allegedly ignored Plaintiff's evidence, ordered M. back into the foster care system, and issued an order directing Plaintiff to stay away from M. (*Id*. at 27-28.)

In 2024-2025, Judge Exias presided over Plaintiff's neglect proceeding, during which time he allegedly displayed bias against Plaintiff and ruled against her. (*Id*. at 28.) He also forced Plaintiff to observe the proceedings from another room, which prevented her from assisting her counsel in the hearing. (*Id*. at 28-29.) Similarly, Judge Cornell presided over proceedings related to the custody of C. and M., and he failed to order them removed from the allegedly dangerous

foster care situation. (*Id*. at 30.) Likewise, Judge Ascher, who allegedly knew of the abuse in the Chindemi household, issued an order permitting Chindemi to take M. out of state, which allegedly placed M. at risk of further abuse. (*Id*.)

In August 2024, CPS' Aroncio advised Chindemi to file a petition for custody of M. During subsequent proceedings, Aroncio committed perjury and coached M. to also perjure herself. Judge Exias thereafter ruled against Plaintiff. (ECF No. 6-1, at 1-2.)

Plaintiff next alleges that despite having a court order allowing for supervised visits, CPS' DeLeon refused to permit the visits to take place. (*Id*. at 3.)

## DISCUSSION

### A.    Claims on Behalf of Plaintiff's Children

In the amended petition, Plaintiff repeatedly alleges injuries to her children and seeks relief for those injuries. Ordinarily, non-attorney litigants such as Plaintiff are prohibited from bringing litigation on behalf of other persons. Instead, as nonlawyers, unrepresented plaintiffs can represent only their own interests. *See* 28 U.S.C. § 1654; *U.S. ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is not licensed as an attorney may not appear on another person's behalf in the other's cause.") (internal quotation marks omitted)); *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (noting that § 1654 "allow[s] for two types of representation: 'that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself.'" (quoting *Turner v. American Bar Ass'n*, 407 F. Supp. 451, 477 (N.D. Tex. 1975), *aff'd sub nom. Pilla v. American Bar Ass'n*, 542 F.2d 56 (8th Cir. 1976))). Thus, to the extent that Plaintiff seeks relief on behalf of her children who have reached the age of majority, the Court must dismiss those claims without prejudice to her adult children asserting those claims, either *pro se* or through counsel. To the extent that

Plaintiff intends to seek relief on behalf of her minor children, the Court must dismiss those claims without prejudice to Plaintiff asserting those claims through counsel.

**B.      Private Prosecution**

The amended petition contains numerous allegations that Defendants have violated federal and state criminal statutes, and it appears to suggest that Plaintiff intends to seek relief under those statutes. Plaintiff cannot initiate the arrest and prosecution of an individual in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff direct prosecuting attorneys to initiate a criminal proceeding against any Defendant, because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, to the extent that Plaintiff asserts claims under federal and state criminal statutes, the Court dismisses the claim for failure to state a claim. *See* 28 U.S.C § 1915(e)(2)(B)(ii).

**C.      The False Claims Act**

In the amended petition, Plaintiff invokes the False Claims Act ("FCA"), 31 U.S.C. § 3729, but her allegations do not support relief under that statute. The FCA imposes civil liability on any person who, among other things, knowingly presents, or causes to be presented, to an officer or employee of the federal government, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a). The federal government, or a private person (known as a "relator"), may bring suit for the United States in a *qui tam* action where there has been fraud on the federal government. 31 U.S.C. § 3730(a), (b)(1*); see United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 932 (2009).

This action cannot proceed until Plaintiff obtains representation. Relators act as "partial-assignees of the United States' claim to recovery," *United States ex rel. Eisenstein v. City of New*

*York*, 540 F.3d 94, 101 (2d Cir. 2008) (citation omitted), and the United States "remains the real party in interest," *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) (internal quotation marks and citation omitted). In order to proceed *pro se*, "[a] person must be litigating an interest personal to him." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); *see* 28 U.S.C. § 1654. Because a *qui tam* action is "not the relator's 'own' case . . . , nor one in which he has 'an interest personal to him,'" a litigant cannot pursue such an action *pro se*. *See Flaherty*, 540 F.3d at 93 ("Because relators lack a personal interest in False Claims Act *qui tam* actions, we conclude that they are not entitled to proceed *pro se*." (citing § 1654 and *Iannaccone*, 142 F.3d at 558)).

Accordingly, because Plaintiff cannot proceed *pro se* with a *qui tam* action, the Court dismisses her claims under the FCA, without prejudice to Plaintiff asserting those claims through counsel.

**D.     The *Younger* abstention doctrine**

In Plaintiff's request for relief, she requests a wide variety of injunctive relief, including some relief that would require intervention into ongoing Family Court proceedings.

To the extent that Plaintiff asks this Court to intervene in any Family Court proceedings that are pending in a state court, the Court must dismiss those claims. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that a federal court may not enjoin a pending state-court criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 404 U.S. 37). Application of this *Younger* abstention doctrine has been extended to the three following categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its

10

courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) ("*Sprint*"). The *Younger* abstention doctrine applies to claims for injunctive relief and declaratory relief sought in federal court that would cause that federal court to intervene in any of those types of state court proceedings. *See Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000).

Family court proceedings for the termination of parental rights are "akin to a criminal proceeding" and qualify as one of the exceptional types of proceeding to which *Younger* abstention applies. *See Moore v. Sims*, 442 U.S. 415, 419-20 (1979) (applying *Younger* where parents challenged ongoing termination of parental rights proceedings). Moreover, courts have held that pending child custody proceedings involve at least one of the circumstances mentioned in *Sprint* in which the *Younger* abstention doctrine should be applied, as "it is well-settled that a custody dispute . . . raises important state interests." *Stumpf v. Maywalt*, 605 F. Supp. 3d 511, 517 (W.D.N.Y. 2022). Thus, when a "federal lawsuit implicates the way that New York courts manage their own divorce and custody proceedings—a subject in which the states have an especially strong interest," *Younger* abstention is warranted. *Falco v. Justs. of the Matrim. Parts of the Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (internal quotations omitted). Plaintiff's Section 1983 allegations are based "on the state custody proceedings and . . . involve the state's compelling interest in protecting the welfare of children," and "Plaintiff may raise these claims in the state proceedings." *Maywalt*, 605 F. Supp. 3d at 518 (explaining that the *Younger* abstention doctrine applied where "Plaintiff ask[ed] the Court to declare unconstitutional and to dismiss the state custody proceedings, based on his allegations relating to Defendants' procedure for removing his children, alleged coercion they used during that process, and making untrue statements during the state custody proceedings").

11

For these reasons, the Court must abstain from exercising jurisdiction of Plaintiff's claims for relief that would intrude upon ongoing Family Court proceedings.

**E.      The *Rooker-Feldman* doctrine**

Plaintiff alternatively requests that this Court overturn final orders or judgments issued in her Family Court proceedings that have concluded. To the extent that the state court's findings as to neglect, custody, and visitation are final, however, the *Rooker-Feldman* doctrine requires the dismissal of her claim for such relief.

Under this doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005). Pursuant to the *Rooker-Feldman* doctrine, circumstances that preclude a United States district court from exercising subject-matter jurisdiction include when a litigant seeks relief that invites a federal district court to reject or overturn "the family court's determinations regarding custody, neglect and visitation." *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (internal quotation marks and citation omitted). All of the circumstances barred by the *Rooker-Feldman* doctrine are present here: Plaintiff lost her state-court Family Court proceedings, she complains of injuries caused by final orders in those proceedings, and she invites this court to review and reject those final state-court orders, which were rendered before she filed

12

this action. The *Rooker-Feldman* doctrine therefore bars this Court from granting Plaintiff such relief from those state-court determinations regarding custody, neglect, and visitation. The Court accordingly dismisses any of Plaintiff's claims challenging such final state-court determinations and the injuries caused by those determinations, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

**F.    Rule 8**

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 555). The Court need not accept, however, "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

In the amended petition, Plaintiff fails to make any well-pleaded allegations of wrongdoing, of any kind, against 23 Defendants. For several of these Defendants, Plaintiff relies solely on labels and conclusions, rather than factual allegations that would allow the Court to infer that these Defendants engaged in any wrongdoing. For other Defendants, their names appear in the caption and in the Parties section of the amended pleading, but nowhere else. The Court must therefore dismiss, for failure to state a claim, the following Defendants against whom Plaintiff makes no well-pleaded allegations of wrongdoing: Fina Del Principio, Ed Lussent, Michael Troutner, Allison Aiello, Joan Thomas, Yasmine Boulay, K. Thurston, McDermott, M. Bender, Lashet, Rios, M.

Romanello, H. Mendez, C. Quinn, W. Cunnane, Thomas O'Connell, McKiernan, A. Gould, T. Fitzgerald, D. Spiegel, T. Wooley, Chris Maloney, and Carol Ross. *See* 28 U.S.C. § 1915(e)(2)(B). The Court grants Plaintiff 30 days' leave to amend her pleading to make well-pleaded allegations against them.

**G.      Clarkstown Police Department and Rockland County Department of Social Services**

Plaintiff also names as defendants the Clarkstown Police Department and the Rockland County Department of Social Services. In federal court, an entity's capacity to be sued is generally determined by the law of the state where the court is located. *See* Fed. R. Civ. P. 17(b)(3). Under New York law, municipal agencies cannot be sued in the name of the agency, unless state law provides otherwise. *See Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter*.").

The Court has reviewed the Town of Clarkstown's municipal charter and code, and they do not appear to authorize the Clarkstown Police Department to be sued in its own name. *Accord Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214, 216-17 (S.D.N.Y. 1999) (dismissing claims against the Clarkstown Police Department as a non-suable entity). Thus, the Court must dismiss Plaintiff's claims against the Clarkstown Police Department for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Similarly, the Court has reviewed the County of Rockland's municipal charter and code, and they also appear not to authorize the Rockland County Department of Social Services to be sued in its own name. Thus, the Court dismisses Plaintiff's claims against the Rockland County Department of Social Services for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Considering Plaintiff's intention to pursue claims against administrative arms of the Town of Clarkstown and the Rockland County Department of Social Services, respectively, the Court

14

substitutes, in place of Clarkstown Police Department, the Town of Clarkstown as a defendant under Rule 21 of the Federal Rules of Civil Procedure. Similarly, the Court substitutes, under Rule 21, the County of Rockland in place of the Rockland County Department of Social Services. These amendments are without prejudice to any defenses that the Town of Clarkstown or the County of Rockland may wish to assert.

## H.    Plaintiff's Motions

On December 9, 2025, Plaintiff filed four motions: (1) a motion to seal the entire case and all filings; (2) motion for the court to request counsel; (3) a motion to toll the statute of limitations; and (4) a motion to address qualified immunity early in the litigation. The Court examines each of these motions in turn.

### 1.    Motion to Seal

In both the complaint and the amended petition, Plaintiff includes the full names of her children, as well as information about their status as sex abuse victims, sex abuse perpetrators, and as being in need of substance abuse counseling. The documents that Plaintiff has filed in this action do not reflect any effort to comply with Rule 5.2 of the Federal Rules of Civil Procedure, which requires filers not to include certain sensitive information in their pleadings, including the names of individuals known to be minors, social security numbers, birth dates, and financial-account numbers.[3] Plaintiff now requests that the Court seal those filings and the entire case.

The Court must deny Plaintiff's motion to seal. Both the common law and the First Amendment protect the public's right of access to court documents. *See Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 597-99 (1978); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91-92 (2d Cir.

---

[3] The advisory notes to Rule 5.2 explain that "[p]arties must remember that any personal information not otherwise protected by sealing or redaction will be made available over the internet." Moreover, "[t]he responsibility to redact filings rests with . . . the party making the filing." (*Id.*)

2004). This right of access is not absolute, and "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599 (footnote omitted).

The United States Court of Appeals for the Second Circuit has set forth a three-part analysis to determine whether, under the common law, a document relating to a lawsuit should be made available to the public. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119-20 (2d Cir. 2006). First, the Court must determine whether the document at issue is indeed a "judicial document," to which the public has a presumptive right of access. *Id.* at 119. Judicial documents are those that are "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (internal quotation marks and citation omitted).

Second, if the Court determines that the material to be sealed is a judicial document, then the Court must determine the weight of the presumption of access. *Id.* "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d. 1044, 1049 (2d Cir. 1995).

Finally, "the court must balance competing considerations against" the presumption of access. *Lugosch*, 435 F.3d at 120 (internal quotation marks and citation omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure."[4] *Id.* (internal quotation

---

[4] As to the relevant First Amendment analysis, there are two different approaches. The first is "the so-called 'experience and logic' approach[,] [which] requires the court to consider both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question." *Lugosch*, 435 F.3d at 120 (citations omitted). The Second Circuit has noted that "[t]he courts that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness." *Id.* (citation and internal quotation marks omitted). As to the second approach, courts "consider[] the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings.'" *Id.* (citation and footnote omitted).

16

marks and citation omitted). If the information at issue has already been made publicly available, such availability weighs against restricting public access to it. *See United States v. Basciano*, Nos. 03-CR-0929, 05-CR-0060, 2010 WL 1685810, at *3-4 (E.D.N.Y. Apr. 23, 2010) (privacy interest in sealing documents was weakened by the fact that the public was already aware of the relevant information); *see also Moroughan v. Cnty. of Suffolk*, No. 12-CV-0512, 2021 WL 280053, at *4 (E.D.N.Y. Jan. 24, 2021) ("[G]iven the critical nature of those issues in this litigation and their presence in other public documents, it is the Court's view that the public has a strong interest in access to *all the evidence* surrounding those issues in the Court's Opinion in order to allow the public to make their own assessment of the parties' summary judgment arguments and the Court's decision."); *United States v. Cohen*, No. 18-CR-0602 (WHP), 2019 WL 3226988, at *1 (S.D.N.Y. July 17, 2019) ("[T]he involvement of most of the relevant third-party actors is now public knowledge, undercutting the need for continued secrecy."); *United States v. Key*, No. 98-CR-0446, 2010 WL 3724358, at *3 (E.D.N.Y. Sept. 15, 2010) ("[Defendant] offers no evidence that sealing now what has long been in the public record will prevent some enhanced risk of substantial prejudice to his or his family's safety.").

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such an action." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). Pleadings, which include the document that initiates a civil suit (a complaint), *see* Fed. R. Civ. P. 3, 7(a)(1), are considered judicial documents for the purpose of this analysis, *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 140 (2d Cir. 2016). Plaintiff concedes that her pleadings are judicial in nature. (ECF No. 5, at 14.)

---

Here, because the common law right of access requires the Court to deny Plaintiff's motion to seal this action, there is no need to discuss these approaches to First Amendment analysis.

Plaintiff's pleadings and, by extension, the exhibits attached to her pleadings, are judicial documents, and are, therefore, entitled to a strong presumption of public access. Plaintiff does not plead any facts suggesting that there are countervailing factors that support sealing any of Plaintiff's submissions filed in this action. Plaintiff can seek a narrowly tailored protective order from the Court or negotiate a stipulation and protective order, with Defendants, for the Court's consideration and endorsement, if appropriate. The Court therefore denies Plaintiff's motion, inasmuch as Plaintiff seeks to have this action sealed.

Restrictions on access to the abovementioned submissions that are less severe than sealing them—restrictions on electronic access—can protect the abovementioned information from unnecessary dissemination and protect Plaintiff and third parties from a potential for harm. Accordingly, and in light of Plaintiff's *pro se* status, the Court directs the Clerk of Court to continue to restrict electronic access to those of Plaintiff's submissions that contain the information listed above—namely, the complaint (ECF No. 1), the motions filed on December 9, 2025 (ECF No. 5), and the amended petition (ECF No. 6)—to only court users and the parties in this case.

In order to ensure that a version of the operative pleading is available to the public, the Court orders Plaintiff, within 30 days of this order, to file a redacted version of her amended petition that complies with Rule 5.2. If Plaintiff complies with this order, Defendants shall answer or otherwise respond to the unredacted, amended petition that is the operative pleading (ECF No. 6); the redacted version of the amended petition will remain on the electronic docket and will be available to the public.

Plaintiff is reminded that it is her obligation to comply with Rule 5.2 and to redact from all future filings the names of individuals known to be minors, social security numbers, birth dates, and financial-account numbers.

> **2.    Plaintiff's Application for the Court to Request Counsel**

Plaintiff has submitted an application for the court to request counsel to represent her in this action. The factors to be considered in ruling on an indigent litigant's request for counsel include the merits of the case, Plaintiff's efforts to obtain a lawyer, and Plaintiff's ability to gather the facts and present the case if unassisted by counsel. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *Hodge v. Police Officers,* 802 F.2d 58, 60-62 (2d Cir. 1986). Of these, the merits are "[t]he factor which command[s] the most attention." *Cooper*, 877 F.2d at 172. Because it is too early in the proceedings for the Court to assess the merits of the action, Plaintiff's motion for counsel is denied without prejudice to renewal at a later date.

> **3.    Plaintiff's Remaining Motions**

Plaintiff also filed a motion to toll the statute of limitations and to address qualified immunity early in the case. The Court denies both of these motions as premature and not fit for resolution at this stage of the case. In the event that any Defendant moves to dismiss this action, Plaintiff may submit a brief in opposition in which she argues that the statute of limitations should be tolled and qualified immunity denied.

## I.    Service on Defendants

Because Plaintiff has been granted permission to proceed IFP, she is entitled to rely on the Court and the U.S. Marshals Service to effect service.[5] *Walker v. Schult*, 717 F.3d. 119, 123 n.6 (2d Cir. 2013); *see also* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process . . . in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) (the court must order the Marshals Service to serve if the plaintiff is authorized to proceed IFP).

---

[5] Although Rule 4(m) of the Federal Rules of Civil Procedure generally requires that a summons be served within 90 days of the date the complaint is filed, Plaintiff is proceeding IFP and could not have served summonses and the complaint until the Court reviewed the operative pleading and ordered that summonses be issued. The Court therefore extends the time to serve until 90 days after the date summonses are issued.

To allow Plaintiff to effect service on Defendants through the U.S. Marshals Service, the Clerk of Court is instructed to fill out a U.S. Marshals Service Process Receipt and Return form ("USM-285 form") for Defendants. The Clerk of Court is further instructed to issue summonses and deliver to the Marshals Service all the paperwork necessary for the Marshals Service to effect service upon Defendants.

If the complaint is not served within 90 days after the date the summonses are issued, Plaintiff should request an extension of time for service. *See Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012) (holding that it is the plaintiff's responsibility to request an extension of time for service).

Plaintiff must notify the Court in writing if her address changes, and the Court may dismiss the action if Plaintiff fails to do so.

**CONCLUSION**

The Court dismisses Plaintiff's claims against the Clarkstown Police Department and the Rockland County Department of Social Services. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Clerk of Court is directed to substitute, under Rule 21, the Town of Clarkstown as a defendant in place of the Clarkstown Police Department. Similarly, the Clerk of Court is directed to substitute, under Rule 21, the County of Rockland as a defendant in place of the Rockland County Department of Social Services.

The Court denies Plaintiff's motion to seal but directs the Clerk of Court to maintain the following documents in restricted access, viewable only to court users and parties to this case: the complaint (ECF No. 1), the motion to seal and for related relief (ECF No. 5), and the amended petition (ECF No. 6). The Court directs/orders Plaintiff to file on or before May 29, 2026, a redacted version of her amended petition that complies with Rule 5.2 of the Federal Rules of Civil Procedure.

20

The Court also denies Plaintiff's motion for the court to request counsel, her motion to toll the statute of limitations, and her motion to address qualified immunity early in the case. The Clerk of Court is directed to terminate the motion pending at ECF No. 5.

The Court must dismiss, for failure to state a claim, the following Defendants: Fina Del Principio, Ed Lussent, Michael Troutner, Allison Aiello, Joan Thomas, Yasmine Boulay, K. Thurston, McDermott, M. Bender, Lashet, Rios, M. Romanello, H. Mendez, C. Quinn, W. Cunnane, Thomas O'Connell, McKiernan, A. Gould, T. Fitzgerald, D. Spiegel, T. Wooley, Chris Maloney, and Carol Ross. *See* 28 U.S.C. § 1915(e)(2)(B). The Clerk of Court is directed to terminate these Defendants.

The Clerk of Court is further instructed to issue summonses for Defendants, complete the USM-285 form with the address for each Defendant, and deliver all documents necessary to effect service to the U.S. Marshals Service, including the operative pleading (ECF No. 6).

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

Finally, the Clerk of Court is respectfully directed to mail a copy of this Order to *pro se* Plaintiff at the address listed on ECF and to show service on the docket.

SO ORDERED.

Dated:   April 24, 2026
         White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

21

## SERVICE ADDRESS FOR EACH DEFENDANT

1.    Rockland County Child Protective Services
      50 Sanitorium Road
      Building C
      Pomona, NY 10970

2.    Joan Silvestri
      Rockland County Child Protective Services
      50 Sanitorium Road
      Building C
      Pomona, NY 10970

3.    Radhika Nagubandi
      Rockland County Child Protective Services
      50 Sanitorium Road
      Building C
      Pomona, NY 10970

4.    Carla Ortiz
      Rockland County Child Protective Services
      50 Sanitorium Road
      Building C
      Pomona, NY 10970

5.    Vanessa Torres
      Rockland County Child Protective Services
      50 Sanitorium Road
      Building C
      Pomona, NY 10970

6.    Jill Stahl
      Rockland County Child Protective Services
      50 Sanitorium Road
      Building C
      Pomona, NY 10970

7.    Maria Gaston-Desimone
      Rockland County Child Protective Services
      50 Sanitorium Road
      Building C
      Pomona, NY 10970

8.      Sarah Ramos
        Rockland County Child Protective Services
        50 Sanitorium Road
        Building C
        Pomona, NY 10970

9.      Nadia Hau
        Rockland County Child Protective Services
        50 Sanitorium Road
        Building C
        Pomona, NY 10970

10.     Elsa Gonzoles
        Rockland County Child Protective Services
        50 Sanitorium Road
        Building C
        Pomona, NY 10970

11.     Rollin Aurelien
        Rockland County Child Protective Services
        50 Sanitorium Road
        Building C
        Pomona, NY 10970

12.     Marise Fede
        Rockland County Child Protective Services
        50 Sanitorium Road
        Building C
        Pomona, NY 10970

13.     Myriam Dorcley
        Rockland County Child Protective Services
        50 Sanitorium Road
        Building C
        Pomona, NY 10970

14.     Jolie Arancio
        Rockland County Child Protective Services
        50 Sanitorium Road
        Building C
        Pomona, NY 10970

15. Madelin Deleon
Rockland County Child Protective Services
50 Sanitorium Road
Building C
Pomona, NY 10970

16. Rowen Delson
Rockland County Child Protective Services
50 Sanitorium Road
Building C
Pomona, NY 10970

17. County of Rockland
Rockland County Law Department
11 New Hempstead Road
New City, NY 10956

18. Frank Sung
Rockland County Child Protective Services
50 Sanitorium Road
Building L
Pomona, NY 10970

19. Brad Bookstein
Rockland County Child Protective Services
50 Sanitorium Road
Building L
Pomona, NY 10970

20. Town of Clarkstown
Town Hall
10 Maple Avenue
New City, NY 10956

21. Jason Gioseffi
Clarkstown Police Department
20 Maple Avenue
New City, NY 10956

22. Rockland County Legal Aid Society
2 Congers Road
New City, NY 10956

23. Jacqueline Sands
Rockland County Legal Aid Society
2 Congers Road
New City, NY 10956

24.    Candice Whatley
       Rockland County Legal Aid Society
       2 Congers Road
       New City, NY 10956

25.    Clarkstown Central School District
       621 Route 304
       New City, NY 10956

26.    Mary Chamberlain
       Clarkstown Central School District
       621 Route 304
       New City, NY 10956

27.    Voluntary Counselling Services
       77 South Main Street
       New City, NY 10956

28.    Kathleen Chindemi
       25 Pine Bark Path
       Dahlonega, GA 30533

29.    Cynthia Pilger Gonzolez
       15 Pondview Drive
       Airmont, NY 10901

30.    Vicky Weiner
       18 Foxburn Street
       New City, NY 10956